# Exhibit D

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

```
KIMBERLY L. COX,              )
   Plaintiff,                 )
                              )
vs.                           ) CIVIL NO. 2:14-cv-00810-JRG-RSP
                              )
MEGAN BRENNAN, Postmaster     )
General of the United         )
States, U.S. Postal           )
Services,                     )
   Defendant.                 )
```

_____

ORAL DEPOSITION

JOE MCQUISTON

DECEMBER 2, 2016
_____

ORAL DEPOSITION OF JOE MCQUISTON, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and -numbered cause on the 2nd day of December, 2016, from 10:19 a.m. to 1:37 p.m., before Amber Collins, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the offices of the U.S. Attorney's Office, 110 North College, Suite 700, Tyler, Texas 75702, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

## Page 2

APPEARANCES

FOR PLAINTIFF:
Ms. Rebecca L. Fisher
ATTORNEY AT LAW
P.O. Box 781369
San Antonio, Texas 78278
Telephone: (210)988-2977
Fax: (210)988-2907
E-mail: rebeccafisherlaw@gmail.com

FOR DEFENDANT:
Mr. Bradley Visosky
ASSISTANT UNITED STATES ATTORNEY FOR THE EASTERN DISTRICT OF TEXAS
101 East Park Boulevard
Suite 500
Plano, Texas 75074
Telephone: (972)509-1201
Fax: (972)509-1209
E-mail: bradley.visosky@usdoj.gov

ALSO PRESENT: Kim Cox and Tamra Fisher

REPORTER'S NOTE
Uh-huh = Yes - Affirmative response
Huh-uh = No - Negative response
Quotation marks are used for clarity and do not necessarily indicate a direct quote.
Ellipses are used only to show that an answer has trailed off and not been interrupted.

## Page 3

INDEX
                                        PAGE
Appearances ........................................2
JOE MCQUISTON
Direct Examination by Ms. Fisher .................5
Cross-Examination by Mr. Visosky.................126
Re-Direct Examination by Ms. Fisher..............139
Changes and Signature ..........................154
Court Reporter's Certificate ...................156

EXHIBITS

| EXHIBIT | DESCRIPTION | MARKED |
|---|---|---|
| 1 | Notice of Removal | 9 |
| 2 | Litigation Hold Notice | 10 |
| 3 | Mandatory Stand-Up Talk | 10 |
| 4 | Document In Re: Joe McQuiston's Statement | 71 |
| 5 | Disciplinary Request/Just Cause Worksheet, Dallas District | 77 |
| 6 | August 31, 2012 Letter | 78 |
| 7 | Document In Re: Part of Report of Investigation | 82 |
| 8 | September 7, 2012 Letter | 85 |
| 9 | Fact Finding Interview | 90 |
| 10 | U.S. Postal Service EEO Investigative Affidavit (Witness) | 97 |
| 11 | Letter from Kimberly Cox | 105 |

## Page 4

EXHIBITS (cont.)

| EXHIBIT | DESCRIPTION | MARKED |
|---|---|---|
| 12 | PS Form 1769/301 Accident Report | 108 |
| 13 | Dallas District Safety Accident Call-In Sheet | 113 |
| 14 | Documents Mr. McQuiston Brought In | 118 |
| 15 | Documents Mr. McQuiston Brought In | 118 |

## Page 5

PROCEEDINGS
(DECEMBER 2, 2016)
(The reading of Federal Rule 30(b)(5)(A) into the record was waived by all parties present.)
JOE MCQUISTON,
having been first duly sworn, testified as follows:
DIRECT EXAMINATION
BY MS. FISHER:
   Q.  Sir, would you please state your full name for the record.
   A.  Joe Don McQuiston.
   Q.  Okay.  Mr. McQuiston, have you ever been deposed before?
   A.  No.
   Q.  No.  Okay.  Now, I'm sure you've had an opportunity to meet with the assistant U.S. attorney, but I would like to make sure and go over the rules so it's in the record.  Okay, sir?
   A.  Uh-huh.
   Q.  This is going to be a written record.  And because it's a written record, we will need actual verbal answers.  Do you understand?
   A.  Yes.
   Q.  Because "uh-huh," "huh-uh," head nods, shakes

Page 22

1  hurt herself.
2    Q. Okay. Now, following that, there was an estate
3  sale that you went to. Am I correct, sir?
4    A. Yes.
5    Q. And, first of all, just before we get to that.
6  After Ms. Cox had this accident, she was placed on
7  limited duty, correct, sir?
8    A. Yes.
9    Q. Because she had certain physical limitations,
10 correct?
11   A. Yes.
12   Q. Now, they weren't permanent. Am I right?
13       MR. VISOSKY: Object to form.
14   Q. (By Ms. Fisher) Do you understand my question?
15   A. They -- yes. I -- wait. Now, ask the question
16 again.
17   Q. Sure.
18   A. I'm sorry. I'm sorry.
19   Q. And I'm only asking what you knew at the
20 time --
21   A. Uh-huh.
22   Q. -- okay, sir? But her limitations that
23 occurred that limited what she could do were not known to
24 be permanent limitations, correct?
25       MR. VISOSKY: Object to form.

Page 23

1    A. I can't answer that question because I'm not a
2  doctor. I can only go off of what the doctor says on the
3  CA-17.
4    Q. (By Ms. Fisher) Okay. Were you anticipating
5  her to recover?
6        MR. VISOSKY: Object to form.
7    A. I couldn't answer that question. I'd have to
8  wait 'til the doctor releases her for full duty.
9    Q. (By Ms. Fisher) Okay. Was there anything about
10 her injury that led you to believe that she was going to
11 be on limited duty, as a layperson, as a management
12 official?
13       MR. VISOSKY: Objection, form.
14       MS. FISHER: What's the problem with the
15 form?
16       MR. VISOSKY: It's repetitive, and it
17 calls for speculation. He's -- as he said, he's not a
18 doctor.
19       MS. FISHER: I think he can answer based
20 upon his knowledge as a management --
21       MR. VISOSKY: He can answer question, but
22 I --
23       MS. FISHER: Okay.
24       MR. VISOSKY: -- can preserve my
25 objection, yeah.

Page 24

1        MS. FISHER: Okay.
2    A. Ask me the question one more time.
3    Q. (By Ms. Fisher) Okay. Was there anything that
4  you saw, as a layperson, as a management official, that
5  led you to believe that any of this would be permanent?
6        MR. VISOSKY: Object to form.
7    A. No. We didn't -- we didn't -- we've had
8  several conversations while she was there. She was going
9  to her chiropractor.
10   Q. (By Ms. Fisher) Okay.
11   A. I couldn't -- but, again, I'll state this. I'm
12 not a doctor, and I can't tell you what her limitations
13 and how far the injuries' going to last because you
14 can't. You just have to wait until she's released for
15 full duty from the CA-17.
16   Q. Okay. Now, with that said, do you recall going
17 to an estate sale?
18   A. Yes.
19   Q. Okay. Tell me what led up to you going to that
20 estate sale.
21   A. Led up to me going there?
22   Q. Uh-huh. Why did you go?
23   A. Ronnie Sartors, either on Facebook, or whatever
24 it is now -- because I don't have Facebook, but my wife
25 does -- had an estate sale. And there were some tools on

Page 25

1  there, and I -- I can't -- to my -- best of my knowledge
2  if I called him or I had her Face -- FaceTime him, or
3  whatever it is, you know, they do.
4    Q. Uh-huh?
5    A. Say there was some tools that I was interested
6  in and remind me of that sale date. And I asked if I
7  could come buy them then, and he said, no, I had to wait
8  on the day of this sale because the lady, whoever she
9  was, putting on the sale.
10       That morning, I ran the floor like I
11 normally do. I scheduled myself to go out with a rural
12 carrier named Rachel Knoebel on her route for a yearly
13 inspection, to count her rural boxes and her mileage.
14   Q. Uh-huh.
15   A. I was walking out with my clipboard in my hand,
16 and my cell phone rang, and it was Ronnie Sartors.
17   Q. Okay.
18   A. He asked me, "Hey, you coming out here?" I
19 informed him that I totally forgot. He informed me that
20 there were two other postal employees out there. One was
21 Debbie Isaacs and the other was Kim Cox.
22   Q. Uh-huh.
23   A. And that's when I said, "Kim Cox, what is she
24 doing out there?" And he said that she was purchasing
25 some things, and I said, "I'll be out there." So at that

Page 30

1  canceling the inspection. I went into my office. I
2  might have grabbed my vehicle keys, and I exited the
3  building.
4      Q.  Did you stop to give any instructions to
5  someone since you were leaving the workroom floor?
6      A.  No, I can't -- not to my knowledge.
7      Q.  Okay.
8      A.  I can't remember.
9      Q.  Did you tell anybody when you would be back on
10 the workroom floor, or when to anticipate you to be back?
11     A.  Not to my knowledge. I can't remember.
12     Q.  Who was the supervisor in charge of the floor
13 that day?
14     A.  That morning?
15     Q.  Well, when you left?
16     A.  That would be Cynthia Freeman.
17     Q.  Okay. And do you often leave the work -- the
18 post office without informing a supervisor?
19     A.  No. I told Cynthia that I would be gone. I'll
20 be back -- but I'll be back. I'm coming back. I've got
21 to go do something.
22     Q.  Okay. So you would have told the person you're
23 with, we're going to discontinue what we're doing?
24     A.  Yeah. She was just right there --
25     Q.  Yeah.

Page 31

1      A.  -- walking out.
2      Q.  And then you would have gone to your office to
3  have gotten your vehicle keys?
4      A.  Uh-huh. That's about maybe two minutes.
5      Q.  Okay. And then you would have made sure
6  Ms. Freeman knew you were leaving the workroom floor?
7      A.  That's another minute walking through and then
8  going out the door.
9      Q.  Okay. And so basically we can estimate at
10 least about 5 minutes from the time you took the phone
11 call before you got into your vehicle and left the post
12 office. Would that sound about right?
13     A.  Agreed. Yes.
14     Q.  And then you immediately went on your way to
15 Overton? Am I --
16     A.  Yes.
17     Q.  -- correct? Okay.
18         Now, when you arrived at the real estate
19 sale, sir, what did you do?
20     A.  I drove through the entryway. Went around and
21 parked behind the -- I guess it was a detached garage or
22 detached shop. Walked through the door. Ronnie was
23 there because he was over that shop. I walked out to
24 Ms. Cox's vehicle, walked around it, observed boxes that
25 she's already purchased and put in there from the estate

Page 32

1  sale. And then I stood at the -- I guess it was the
2  garage entryway right there, and the car was probably --
3  I can't remember what I put in my statement. I'd have to
4  look at my statement. Twenty -- you know...
5      Q.  It was quite a ways, wasn't it?
6      A.  No.
7      Q.  Okay.
8      A.  I walked probably about 15 steps, and I was --
9  20 steps, and I was halfway.
10         MR. VISOSKY: Let me just tell you, if you
11 feel comfortable, if you want to look at the items that
12 you brought today, you're -- you're welcome to do that.
13         MS. FISHER: I will do that when I want to
14 in my deposition.
15         MR. VISOSKY: He can -- he can review
16 documents that --
17         MS. FISHER: I will do that.
18         MR. VISOSKY: -- he's brought.
19         MS. FISHER: I will do that.
20         MR. VISOSKY: I'm just letting him know
21 that if he feels comfortable --
22         MS. FISHER: We will go over it. I -- I'd
23 like to have the testimony prior to know what they
24 remember, then we can go in and fill in the blanks.
25         MR. VISOSKY: That's --

Page 33

1      A.  Okay.
2         MR. VISOSKY: That's fine.
3      Q.  (By Ms. Fisher) Would I be correct, there were
4  numerous cars there that day?
5      A.  I don't remember.
6      Q.  Okay. You don't remember. Do you recall when
7  you went into the building that if -- whether or not
8  there were other people that were in that building?
9      A.  I think there was one gentleman to the corner
10 over here (indicating).
11     Q.  And you pointed to --
12     A.  I'm sorry.
13     Q.  -- your right?
14     A.  I'm sorry. The doors -- if you've never been
15 out there, the two doors are facing this a way, and then
16 you have, I think, a door here. Maybe I went around. I
17 can't remember. There might not even been a door. But
18 you come around, and the gentlemen was in the far corner
19 over here (indicating).
20     Q.  Okay.
21     A.  If you're looking inside the building, he's to
22 your left then --
23     Q.  Okay.
24     A.  -- in the corner there.
25     Q.  And when --

9 (Pages 30 to 33)

Page 70

1    A.  Or when I was out from the supervisor to the
2    postmaster position, sometime in that year, sometime in
3    that...
4    Q.  Have you looked at her medical restrictions?
5    A.  Yes.
6    Q.  Okay.  Have you seen anything in her medical
7    restrictions that limits what she can pick up?
8    A.  I'd have to look at them.  I can't -- I can't
9    tell you perbatim what they are, but I have reviewed
10   them.  I just can't tell you what they are right now.
11   Q.  And as you sit here today, did you ever check
12   whether or not what Ms. Morris may be picking up exceeded
13   her weight limitations?
14   A.  I did call the OIG one time, and he said he
15   already investigated that.
16   Q.  And my question is -- and I'm going to ask it
17   again.  Okay, sir?  Did you ever personally check whether
18   the things that she was picking up would have exceeded
19   her lifting restrictions?
20   A.  No.
21   Q.  Okay.  Do you get any incentives if you have
22   anything where you're finding fraud?
23   A.  Repeat that question again.
24       MR. VISOSKY:  Object to the form.
25   Q.  (By Ms. Fisher) Do you get any incentives as a

Page 71

1    management official if you can say, "I found fraud"?
2    A.  What's the definition --
3        MR. VISOSKY:  Object to form.
4    A.  -- of "incentives"?
5    Q.  (By Ms. Fisher) Anything that would be
6    something that --
7    A.  A pen?
8    Q.  Anything, sir.
9    A.  No.
10   Q.  No?  Nothing?
11   A.  Nothing.
12   Q.  Why did you ask me what I thought was an
13   incentive?
14   A.  I needed to know your definition of an
15   incentive.
16   Q.  Okay.  So what do you think that you received
17   that may not be within my definition of an incentive that
18   would make you ask that question?
19       MR. VISOSKY:  Object to form.
20   A.  I asked the question.
21       (Exhibit 4 marked)
22   Q.  (By Ms. Fisher) Okay.  Okay.  I'm going to have
23   you look at what is Exhibit No. -- Deposition Exhibit
24   No. 4.
25       MS. FISHER:  There you go, sir.

Page 72

1    Q.  (By Ms. Fisher) And it would be one -- actually
2    one of the items that you brought, sir; but this one I'll
3    go ahead and mark for the record.  You can take a look at
4    it, and then let me know when you've seen it.
5    A.  (Witness peruses document.)
6    Q.  Do you recognize this document, sir?
7    A.  Yes.  That's my statement.
8    Q.  **Okay.  Now, at the very beginning of this it**
9    **says, "Status."  And it puts on there, "On limited duty**
10   **with restrictions; reporting at 8:00 a.m. to 16:30 p.m.**
11   **30-minute lunch; placed on stand by time; sits in the**
12   **Passport Office."**
13   **What duties was Ms. Cox doing in the**
14   **passport office?**
15   **A.  It's -- it's a small room where we take**
16   **passports.  There is a phone in there.  I don't remember**
17   **if she could -- if she was answering the phone or not,**
18   **but that's pretty much it.**
19   Q.  Okay.  Well, so in essence, she was being
20   ordered to come into work every day?
21       MR. VISOSKY:  Object to form.
22   Q.  (By Ms. Fisher) Correct?  I mean, she was
23   scheduled to come into work, correct?
24   A.  Correct.
25   Q.  Okay.  And she was then informed, which is

Page 73

1    ordered --
2    A.  Uh-huh.
3    Q.  -- that she would be sitting in the passport
4    office, correct?
5        MR. VISOSKY:  Object to form.
6    A.  She -- there is a form, and I can't remember
7    the numbers.  It's a 30-something X.  You write down what
8    her duties are, which falls in between her restrictions.
9    And if I filled it out, she signed it.  And I don't know
10   if it's in that packet or not.
11       MS. FISHER:  Okay.  Objection,
12   nonresponsive.
13   Q.  (By Ms. Fisher) But my question is:  That she
14   was being required to show up at the post office and go
15   to the passport office, correct?
16   A.  Yes, that's correct.
17   Q.  Okay.  And if she was given no duties, she was
18   being made to come in and sit down at the post office
19   with virtually nothing to do?
20       MR. VISOSKY:  Object to form.
21   Q.  (By Ms. Fisher) Correct?
22   A.  Correct.
23   Q.  Okay.  Why?
24   A.  Because of her limitations --
25   Q.  Okay.

```
                                        Page 154
 1           CHANGES AND SIGNATURE
 2    WITNESS NAME:  JOE MCQUISTON
 3    DATE OF DEPOSITION: DECEMBER 2, 2016
 4    PAGE   LINE   CHANGE           REASON
 5    _____
 6    _____
 7    _____
 8    _____
 9    _____
10    _____
11    _____
12    _____
13    _____
14    _____
15    _____
16    _____
17    _____
18    _____
19    _____
20    _____
21    _____
22    _____
23    _____
24    _____
25    _____
```

```
                                        Page 155
 1        I, JOE MCQUISTON, have read the foregoing deposition
 2    and hereby affix my signature that same is true and
 3    correct, except as noted above.
 4              _____
 5                   JOE MCQUISTON
 6
 7    THE STATE OF _____)
 8    COUNTY OF _____)
 9
10        Before me, _____, on this day
11    personally appeared JOE MCQUISTON, known to me (or
12    proved to me under oath or through _____)
13    (description of identity card or other document) to be
14    the person whose name is subscribed to the foregoing
15    instrument and acknowledged to me that he/she executed
16    the same for the purpose and consideration therein
17    expressed.
18       Given under my hand and seal of office on this _____
19    day of _____, _____.
20
21              _____
22              NOTARY PUBLIC IN AND FOR
23                 THE STATE OF _____
24    My Commission Expires: _____
25    _____No Changes Made   _____Amendment Sheet(s) Attached
```

```
                                        Page 156
 1               REPORTER'S CERTIFICATE
 2            ORAL DEPOSITION OF JOE MCQUISTON
 3                   DECEMBER 2, 2016
 4
 5
 6       I, Amber Collins, Certified Shorthand Reporter in
 7    and for the State of Texas, hereby certify to the
 8    following:
 9       That the witness, JOE MCQUISTON, was duly sworn by
10    the officer and that the transcript of the oral
11    deposition is a true record of the testimony given by
12    the witness;
13       That the original deposition was delivered to
14    Ms. Fisher, Custodial Attorney.
15       That pursuant to information given to the deposition
16    officer at the time said testimony was taken, the
17    following includes all parties of record and the amount
18    of time used by each party at the time of the
19    deposition:
20       Ms. Fisher (2 hours, 34 minutes)
            Attorney for Plaintiff
21
         Mr. Visosky (0 hours, 17 minutes)
22          Attorney for Defendant
23       That a copy of this certificate was served on all
24    parties and/or the witness shown herein on
25    _____.
```

```
                                        Page 157
 1       I further certify that pursuant to FRCP Rule 30(3)
 2    that the signature of the deponent:
 3         X    was requested by the deponent or a party
 4    before the completion of the deposition and that the
 5    signature is to be before any notary public and returned
 6    within 30 days from date of receipt of the transcript.
 7    If returned, the attached Changes and Signature Page
 8    contains any changes and the reasons therefore.
 9         _____ was not requested by the deponent or a
10    party before the completion of the deposition.
11       I further certify that I am neither counsel for,
12    related to, nor employed by any of the parties or
13    attorneys in the action in which this proceeding was
14    taken, and further that I am not financially or
15    otherwise interested in the outcome of the action.
16       Certified to by me on this 19th day of
17    December, 2016.
18
19
20
21              _____
                Amber Collins, CSR
22              Texas CSR 9086
                Expiration: 12/31/2016
23
24
25
```

McQuiston Joe                                                                December 2, 2016

```
                                               Page 158
 1     STATE OF TEXAS   )
 2     COUNTY OF RUSK   )
 3
 4         I hereby certify that the witness was notified on
 5     _____ that the witness has 30 days or
 6     (_____days per agreement of counsel) after being
 7     notified by the officer that the transcript is available
 8     for review by the witness and if there are changes in
 9     the form and substance to be made, then the witness
10     shall sign a statement reciting such changes and the
11     reasons given by the witness for making them;
12         That the witness' signature was/was not returned as
13     of _____.
14         Subscribed and sworn to on this, the _____day of
15     _____, 2016.
16
17
18
19
20         _____
21         Amber Collins, CSR
           Texas CSR 9086
22         Expiration:  12/31/2016
23
24
25
```

41 (Page 158)