# Exhibit B

Page 1

```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
                      MARSHALL DIVISION


KIMBERLY L. COX,              )
                              )
     Plaintiff,               )
                              )
vs.                           )  CIVIL ACTION NO.
                              )
MEGAN J. BRENNAN,             )  2:14-CV-00810-JRG-RSP
POSTMASTER GENERAL OF THE     )
UNITED STATE, U.S. POSTAL     )
SERVICES,                     )
                              )
     Defendant.               )
```

ORAL AND VIDEOTAPED DEPOSITION OF CYNTHIA FREEMAN

DECEMBER 1, 2016


ORAL AND VIDEOTAPED DEPOSITION OF CYNTHIA FREEMAN, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on December 1, 2016, at 2:08 p.m. to 3:51 p.m., before Brenda Hightower Smith, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the U.S. Attorney's Office, 110 North College, Suite 700, Tyler, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

It is also agreed by all parties present that Federal Rule 30(b)(5) is waived.

## Page 2

```
 1              APPEARANCES
 2   FOR THE PLAINTIFF:
 3       MS. REBECCA L. FISHER
         ATTORNEY AT LAW
 4       618 SW Military Drive
         P.O. Box 781369
 5       San Antonio, Texas  78278
         210.988.2977 (phone)
 6       rebeccafisherlaw@gmail.com (e-mail)
 7
 8   FOR THE DEFENDANT:
 9       MR. BRADLEY VISOSKY
         U.S. DEPARTMENT OF JUSTICE
10       UNITED STATES ATTORNEY'S OFFICE
         Assistant United States Attorney
11       Eastern District of Texas
         101 East Park Boulevard, Suite 500
12       Plano, Texas  75074
         972.509.1201 (phone)
13       bradley.visosky@usdoj.gov (e-mail)
14           - and -
15       MS. THERESA M. GEGAN
         U.S. POSTAL SERVICE
16       SOUTHERN AREA LAW OFFICE
         P. O. Box 227078
17       Dallas, Texas  75222-7078
         214.252.6178 (phone)
18       theresa.m.gegen@usps.gov (e-mail)
19
20   ALSO PRESENT:
21       TAMRA FISHER
         KIMBERLY COX
22
23   VIDEOGRAPHER:
24       JEFF MILLER
25
```

## Page 3

```
 1              INDEX
 2                            PAGE
 3   Appearances.................................   2
     Exhibit Index...............................   3
 4   Stipulations................................   4
 5   CYNTHIA FREEMAN, the witness,
 6
         Examination by Ms. Fisher ..............   5
 7       Examination by Mr. Visosky .............  52
         Further Examination by Ms. Fisher ......  64
 8       Further Examination by Mr. Visosky .....  75
 9   Correction and Signature Page..............  77
     Reporter's Certificate.....................  79
10
11
12
13              EXHIBITS
14   NO.   DESCRIPTION                        PAGE
15   Exhibit 1
         Informal A Meeting notes dated 10-23-12 ..  29
16   Exhibit 2
         E-mail dated October 4, 2013 from
17       Cynthia Freeman to Harold Bennett ........  48
18
19
20
21
22   Ellipses are used only to show that an answer has
         trailed off and not been interrupted.
23   Quotation marks are not meant to be interpreted as
                direct quotes.
24       Uh-huh = yes, affirmative
         Huh-uh = no, negative
25
```

## Page 4

```
               PROCEEDINGS
 1
 2       THE COURT REPORTER:  What agreements do
 3   you want to take this under?
 4       MR. VISOSKY:  Under the Federal Rules.
 5       MS. FISHER:  Yeah.
 6       THE COURT REPORTER:  I'll ask about
 7   signature at the end of the deposition.
 8       THE VIDEOGRAPHER:  We are on the record
 9   to begin the video recorded deposition of Cynthia
10   Freeman in the matter of Kimberly L. Cox vs. Megan
11   Brennan.  Today is Thursday, December 1st, 2016, and the
12   time is approximately 2:08 p.m.
13       This case is filed in the United States
14   Federal Court for the Eastern District of Texas under
15   Cause No. 2:14-cv-00810-JRG-RSP.  And the location is
16   the office of the United States Attorney at 110 North
17   College Avenue in Tyler, Texas.
18       The court reporter is Brenda Smith and
19   the videographer is Jeff Miller.
20       And for the record, will counsel present
21   please identify yourselves and who you represent; and
22   after which, the court reporter will swear in the
23   witness.
24       MS. FISHER:  Rebecca Fisher representing
25   the Plaintiff.
```

## Page 5

```
 1       MR. VISOSKY:  Bradley Visosky
 2   representing the Defendant Megan Brennan.
 3       MS. GEGEN:  Theresa Gegen for the Postal
 4   Service.
 5
 6           CYNTHIA FREEMAN,
 7   having first been duly sworn, testified under oath as
 8   follows:
 9
10              EXAMINATION
11   BY MS. FISHER:
12   Q.  Ma'am, would you please state your full name
13   for the record.
14   A.  Cynthia Howard Freeman.
15   Q.  Okay.  Mrs. Freeman, my name is Rebecca
16   Fisher, and I represent Mrs. Kimberly Cox in this case.
17       And I know we have not met before, have we,
18   ma'am?
19   A.  No, ma'am.
20   Q.  And I do want to tell you thank you for being
21   present today.  I do thank you for coming in.  Okay?
22   A.  Okay.
23   Q.  And now when -- have you ever been deposed
24   before?  Let me ask you that.
25   A.  No.
```

## Page 34

```
14:42:25  1      Q.  Okay.  But you were given questions that you
14:42:28  2   answered; am I correct?
14:42:30  3      A.  Yes.
14:42:30  4      Q.  Okay.  And is it your testimony that even then
14:42:34  5   you were not aware that there was a claim of
14:42:37  6   discrimination?
14:42:38  7      A.  I -- I was on leave or something at that time.
14:42:42  8      Q.  Uh-huh.
14:42:43  9      A.  And FLSA, I wasn't fixing to violate nothing.
14:42:49 10   So yes, Joe tried to give me her EEO, and I refused it
14:42:53 11   because I wasn't on the clock.
14:42:55 12      Q.  Okay.  And did he at that point -- when you
14:42:57 13   say Joe, that's Postmaster McQuiston?
14:42:59 14      A.  Yes.  Yes.  I'm sorry.
14:43:02 15      Q.  I just wanted to make sure.  That's for the
14:43:04 16   record.
14:43:06 17          Did he at that point say, hey, you really need
14:43:08 18   to look at this; she has an accusation that your
14:43:12 19   treatment of the white females is discriminatory?
14:43:15 20      A.  No, ma'am.
14:43:16 21      Q.  So not only did he not discuss it prior to her
14:43:18 22   termination -- well, let me -- let me ask this first
14:43:23 23   before I go there, Mrs. Freeman.
14:43:25 24          Let's say, okay, we've had up to Mrs. Cox's
14:43:30 25   termination.
```

## Page 35

```
14:43:30  1      A.  Okay.
14:43:31  2      Q.  And she's now terminated.
14:43:33  3      A.  Okay.
14:43:33  4      Q.  And during the period that she's out of
14:43:36  5   work -- let me make sure I've got that clear on the
14:43:39  6   record.
14:43:40  7          During the period she's out of work before she
14:43:42  8   returns to work, did Postmaster McQuiston ever discuss
14:43:45  9   with you a complaint of discrimination that concerned
14:43:48 10   yourself?
14:43:49 11      A.  No, ma'am.
14:43:49 12      Q.  Okay.  Now, when Mrs. Cox came back to work in
14:43:53 13   April of 2013, --
14:43:54 14      A.  Okay.
14:43:55 15      Q.  -- did Mr. -- or did Postmaster McQuiston at
14:44:00 16   that point forward ever come to you and say, there's an
14:44:04 17   allegation that you are treating the white females on
14:44:07 18   the workroom floor discriminatorily?
14:44:10 19      A.  No, ma'am.
14:44:11 20      Q.  Okay.  And once again, no investigation was
14:44:13 21   ever --
14:44:14 22      A.  None whatsoever, to my knowledge.
14:44:16 23      Q.  Okay.  Mrs. Freeman, what would be your
14:44:28 24   response to the allegation that you treated the white
14:44:37 25   females on that workroom floor in a much less favorable
```

## Page 36

```
14:44:43  1   way than their counterparts?
14:44:47  2      A.  Let me say, I hear you saying had I had to
14:44:54  3   answer to an allegation, what would have been my
14:44:57  4   response?
14:44:58  5      Q.  Yes.
14:44:59  6      A.  My response at that time would have been, who
14:45:02  7   and let's talk about it.  Because number one, if I'm not
14:45:08  8   aware, then I have no response.  But once I'm made aware
14:45:13  9   and how a person feel, then I can respond.  You see what
14:45:17 10   I'm saying?
14:45:18 11      Q.  I understand what you're saying.  And
14:45:20 12   basically -- I'm making sure I'm getting this correct,
14:45:24 13   Mrs. Freeman.
14:45:31 14          What you're saying is if you had become aware
14:45:34 15   that there may have been a view by those on the floor
14:45:37 16   that there was something discriminatory, unfair, --
14:45:41 17      A.  Yes, ma'am.
14:45:41 18      Q.  -- if you had been aware of that, are you
14:45:44 19   saying you would have looked at that and seen what was
14:45:47 20   going on?
14:45:48 21      A.  Yes, ma'am.
14:45:49 22      Q.  Maybe you could even have changed how you were
14:45:52 23   acting if you looked at it and said, well, maybe I need
14:45:55 24   to tweak that a little bit?
14:45:57 25          MS. FISHER:  Object to form.
```

## Page 37

```
14:46:00  1      Q.  (By Ms. Fisher) You understand my question?
14:46:02  2      A.  I understand.  My theory in dealing with
14:46:04  3   people --
14:46:05  4      Q.  Uh-huh.
14:46:05  5      A.  -- with my equal opportunity training is, when
14:46:08  6   you can meet a person at they point of need what they
14:46:12  7   might perceive is correct in their mind --
14:46:14  8      Q.  Right.
14:46:14  9      A.  -- because they're perceiving it, --
14:46:16 10      Q.  Yes.
14:46:16 11      A.  -- there might have been a time when I might
14:46:18 12   have needed that.  There might have been a time when we
14:46:21 13   could have came to an agreement that we both needed
14:46:24 14   that.  But unless it's addressed, we can't address it.
14:46:27 15      Q.  Okay.  Have you yourself ever filed an EEO,
14:46:33 16   Mrs. Freeman?
14:46:33 17      A.  Yes, ma'am.
14:46:34 18      Q.  Okay.  How many times have you filed one?
14:46:36 19      A.  Once in my whole career out of 35 years.
14:46:39 20      Q.  And when in the -- in your postal career did
14:46:45 21   that occur, ma'am?
14:46:46 22      A.  That happened right before my retirement.
14:46:50 23      Q.  Who did you file against?
14:46:52 24      A.  Joe McQuiston.
14:46:53 25      Q.  And what were your purviews?
```

```
                                    Page 38
14:46:56   1     A.  It was that I was being mistreated as
14:47:03   2  management and not being able to perform my duties
14:47:06   3  because of the treatment.
14:47:07   4     Q.  Now, did you put that to the fact that you're
14:47:11   5  a woman, your age, your race?  What -- what did you
14:47:16   6  apply the mistreatment to?
14:47:19   7     A.  I think I covered my age and my race, and I
14:47:27   8  might even throwed in my religion.
14:47:31   9     Q.  Okay.
14:47:32  10     A.  Right now, I don't know.  But I know I did do
14:47:35  11  age and my race.
14:47:36  12     Q.  And why did you believe that it was race with
14:47:39  13  Joe McQuiston?
14:47:40  14     A.  Because of the things that was happening that
14:47:43  15  didn't have to happen.
14:47:44  16     Q.  Okay.  Can you --
14:47:46  17     A.  And that's personal stuff that I do not wish
14:47:48  18  to discuss.
14:47:50  19     Q.  I understand that.  But I need to understand
14:47:53  20  what happened and why you think that Joe McQuiston
14:47:59  21  discriminated against you because of your race.
14:48:02  22     A.  Well, let me -- let me just keep it to this
14:48:07  23  case.  Can we do that?
14:48:09  24     Q.  I'm sorry, ma'am, but I need to understand why
14:48:12  25  you thought it was race with Joe McQuiston.  I am sorry,

                                    Page 39
14:48:16   1  but our case does involve a race allegation.  And I
14:48:20   2  don't want something to come out later I don't know
14:48:23   3  about.
14:48:24   4     A.  Okay.  My -- mine was based on not being able
14:48:28   5  to do my job properly because I hadn't been trained
14:48:32   6  properly.
14:48:37   7     Q.  In other words, you -- did -- is your
14:48:40   8  assertion that you were set up to fail?
14:48:42   9     A.  Yes.
14:48:44  10     Q.  And did you believe that that was the
14:48:50  11  responsibility of your Postmaster?
14:48:51  12     A.  To train me properly?  Yes, ma'am.
14:48:54  13     Q.  Okay.  Did Postmaster McQuiston ever say
14:49:00  14  anything to you that was derogatory regarding race?
14:49:10  15     A.  No.
14:49:12  16     Q.  Okay.  And sometimes there are very blatant
14:49:18  17  racial things that can be said; and sometimes there's
14:49:22  18  very subtle racial things --
14:49:24  19     A.  Uh-huh.
14:49:24  20     Q.  -- that can be said or done.
14:49:28  21     A.  Uh-huh.
14:49:28  22     Q.  Did anything come to mind?
14:49:30  23     A.  Yes.  The one incident that comes to mind --
14:49:33  24         MS. FISHER:  Rebecca, I'm -- I just want
14:49:35  25  to raise something real quick.  And I'm sorry -- I'm

                                    Page 40
14:49:37   1  sorry --
14:49:39   2         THE WITNESS:  Sure.
14:49:39   3         MR. VISOSKY:  -- to both of you for
14:49:40   4  interpreting.
14:49:40   5         But is your EEO case closed or is it
14:49:43   6  still open?
14:49:45   7         THE WITNESS:  Mine is closed.
14:49:47   8         MR. VISOSKY:  Okay.  I just wanted to
14:49:48   9  make sure she wasn't --
14:49:50  10         THE WITNESS:  Violating something?
14:49:52  11         MR. VISOSKY:  Well, just to protect --
14:49:52  12  since you don't have --
14:49:52  13         THE WITNESS:  Yeah.
14:49:52  14         MR. VISOSKY:  -- representation here for
14:49:52  15  your case.
14:49:54  16         THE WITNESS:  No, no.  Mine is closed.
14:49:54  17         MR. VISOSKY:  Okay.
14:49:55  18     Q.  (By Ms. Fisher) Go ahead, ma'am.
14:49:56  19     A.  In mine -- in one instance that I can point to
14:49:59  20  is when you have an employee that come to you --
14:50:20  21     Q.  Yes.
14:50:21  22     A.  -- and tell you that the KKK is recruiting on
14:50:26  23  they route and the Postmaster does nothing about it, I
14:50:31  24  have a issue with that, being black.
14:50:36  25     Q.  I can understand that, Mrs. Freeman.

                                    Page 41
14:50:43   1  Did you report that to Postmaster McQuiston?
14:50:45   2     A.  Yes.
14:50:46   3     Q.  And what was his response?
14:50:49   4     A.  That he didn't believe it.  It was no big
14:50:53   5  deal.
14:50:57   6     Q.  Was there anything else that you can think of
14:50:59   7  at this time?
14:51:02   8     A.  No.  Other than just being right mean, no.
14:51:05   9         THE COURT REPORTER:  Did you say "right
14:51:05  10  mean"?
14:51:05  11         THE WITNESS:  Right mean.
14:51:05  12         THE COURT REPORTER:  Thank you.
14:51:08  13     Q.  (By Ms. Fisher) And how old are you,
14:51:14  14  Mrs. Freeman?
14:51:21  15     A.  I'm 61.
14:51:22  16     Q.  Okay.  So old enough to have seen some of the
14:51:25  17  civil rights actions?
14:51:27  18     A.  Yes.
14:51:33  19     Q.  What was the final resolution of that EEO,
14:51:35  20  Mrs. Freeman?
14:51:38  21     A.  To pay me my sick leave according to the
14:51:47  22  Family Medical Leave Act, to stop denying my retirement
14:51:51  23  papers, and just let me go.
14:51:55  24     Q.  When you say denying your retirement papers,
14:51:57  25  were you having trouble getting your retirement
```

## Page 54

```
15:22:55   1        Q.  Would you treat an employee differently
15:22:57   2    because of their gender?
15:22:59   3        A.  No.
15:23:04   4        Q.  Did you treat Kim Cox any differently because
15:23:09   5    she was a white female as opposed to a black female or a
15:23:12   6    white man?
15:23:13   7        A.  No.
15:23:14   8        Q.  If another employee of whatever race, I mean,
15:23:18   9    you name it --
15:23:19  10        A.  Uh-huh.
15:23:19  11        Q.  -- black man, Hispanic female, whatever -- had
15:23:25  12    done the things that Kim Cox had done -- and by that I
15:23:29  13    mean just substitute Kim Cox and the other raced
15:23:35  14    employee, you know, a black man, a white -- a white man,
15:23:43  15    whatever --
15:23:43  16        A.  Okay.
15:23:44  17        Q.  -- had acted the same way that Kim Cox had
15:23:47  18    done --
15:23:48  19             I'm sorry, let me -- let me -- let me rephrase
15:23:52  20    that.
15:23:57  21             If someone of a -- if an employee of a
15:24:00  22    different gender and race than Kim Cox had done the
15:24:03  23    exact same thing, been the same type of employee, done
15:24:07  24    the same type of work that Kim Cox did during your time
15:24:11  25    as her supervisor, would you have treated that employee
```

## Page 55

```
15:24:15   1    any differently than you treated Kim Cox?
15:24:18   2        A.  No.  I think one of the things that we're
15:24:20   3    finding here is the system that the Post Office has set
15:24:26   4    up is that XYZ said you can do this in XYZ time.  If you
15:24:34   5    do it past that time, my job is to question why so that
15:24:38   6    I can make a decision at that time to go in the system
15:24:42   7    to approve it because of something that might occurred
15:24:45   8    during the carrying of the mail that I was not aware of.
15:24:49   9             You could have had an accident somewhere.  You
15:24:52  10    could have had traffic backed up that was blocking
15:24:55  11    certain things.  And at that point, it's going to cause
15:24:58  12    you to be delayed.  Then I have to go in the system and
15:25:01  13    approve that time.  And then the next morning during a
15:25:04  14    conference call, I have to explain why.
15:25:06  15             So any time I approached Mrs. Cox, it was
15:25:09  16    doing something job related.  It wasn't personal.
15:25:12  17        Q.  Right.
15:25:13  18             And -- and was it -- any of your actions that
15:25:15  19    you took with respect to Mrs. Cox, were those actions
15:25:18  20    that you took done because of her race or gender?
15:25:21  21        A.  No.
15:25:24  22        Q.  Did Mrs. Cox when you were her supervisor, did
15:25:27  23    she ever come to you and tell you, Mrs. Freeman, you're
15:25:31  24    not treating me well because of my -- because I'm white
15:25:35  25    or because I'm a white female; you don't treat me the
```

## Page 56

```
15:25:39   1    same way that you treat other employees?  Did she ever
15:25:43   2    once come to you and tell you that?
15:25:44   3        A.  No.
15:25:58   4        Q.  When Ms. Fisher was questioning you, you had
15:26:03   5    spoken about your EEO case --
15:26:05   6        A.  Uh-huh.
15:26:05   7        Q.  -- involving Mr. McQuiston?
15:26:08   8        A.  Uh-huh.
15:26:08   9        Q.  Do you recall that?
15:26:11  10             I just want to talk about the term
15:26:13  11    "retaliation."
15:26:14  12        A.  Okay.
15:26:15  13        Q.  And for purposes -- for our purposes right
15:26:18  14    now, I'm going to define that as when an employee
15:26:22  15    engages in a protected activity.
15:26:24  16             Like for example, if an employee files an EEO
15:26:27  17    case, I mean the law says if you file an EEO case,
15:26:31  18    engage in protected activity, management and employer
15:26:36  19    can't retaliate or punish --
15:26:39  20        A.  Uh-huh.
15:26:40  21        Q.  -- that employee for engaging in EEO activity.
15:26:43  22        A.  Right.
15:26:43  23        Q.  Based on your experience with Mr. McQuiston,
15:26:49  24    did he have the propensity to retaliate against
15:26:55  25    employees for engaging in protected activity as I've
```

## Page 57

```
15:26:59   1    just defined it?
15:27:03   2        A.  What I'm hearing you say, and let me make
15:27:06   3    sure, you're asking me if he had the fortitude to
15:27:11   4    retaliate against somebody because somebody said
15:27:14   5    something that he didn't agree with?  Am I hearing that?
15:27:18   6        Q.  No.  Let -- let me ask you:  Say an employee
15:27:21   7    files an EEO case.
15:27:23   8        A.  Okay.
15:27:25   9        Q.  Is he the type of person if he -- if he finds
15:27:29  10    out that that employee filed an EEO case, is he the type
15:27:32  11    of person based on your experience and understanding
15:27:34  12    that would punish that employee for filing the EEO case?
15:27:38  13        A.  No.  No.
15:27:40  14             For the thing that I didn't go into and I was
15:27:43  15    speaking on my behalf only, nothing else, was the fact
15:27:48  16    that my area of responsibility was not performed to the
15:27:55  17    best of my ability because the limitations that were put
15:27:59  18    on me in that office.
15:28:03  19             It was not my job to go to the floor to
15:28:06  20    badmouth Mr. McQuiston, like I would never badmouth any
15:28:11  21    employee with another employee.  That's not my make-up.
15:28:14  22    So even though I'm going through my own personal trials,
15:28:17  23    they was not aware of it because I refused to talk about
15:28:20  24    it.
15:28:20  25             So when I was speaking, I was speaking on my
```

Page 74

```
15:47:05  1       And that I did when I was in Flint only
15:47:09  2  because you didn't have people to carry the mail and it
15:47:11  3  was a rural route. So that part.
15:47:13  4       But to say me walking the streets and carrying
15:47:16  5  mail like they do, the city carriers, no, ma'am.
15:47:19  6     Q. Okay. Now, I just want to make sure and
15:47:23  7  verify on -- on the purposes of the record, that by your
15:47:28  8  personal observations, you did feel as though Joe
15:47:32  9  McQuiston had retaliated against you?
15:47:36 10          MR. VISOSKY: Object to form.
15:47:38 11     A. I feel that he was being mean and spiteful
15:47:41 12  knowing he had to do what he was not wanting to do
15:47:45 13  anyhow. And I could wait him out.
15:47:49 14     Q. (By Ms. Fisher) Okay.
15:47:50 15     A. Most people in the Post Office can't wait him
15:47:53 16  out. But I wasn't set up like that. I was getting
15:47:55 17  ready to retire, so three months of pay didn't affect me
15:47:59 18  as worse as it would have somebody else.
15:48:02 19       My thing was just get the paperwork ball and
15:48:05 20  go, and let me get the heck out of here. The Post
15:48:08 21  Office has been good to me. And I would hate for
15:48:12 22  anything to scar that.
15:48:14 23     Q. In other words, you don't have any ault
15:48:14 24  (spelled phonetically) against the United States Postal
15:48:17 25  Service?
```

Page 75

```
15:48:17  1     A. No. They've been good to me and my family.
15:48:20  2     Q. Okay. Well, I understand that. And I thank
15:48:21  3  you for your time.
15:48:22  4     A. Thank you.
15:48:24  5          MS. FISHER: Pass the witness.
15:48:24  6          MR. VISOSKY: Just one thing.
15:48:24  7              FURTHER EXAMINATION
15:48:24  8  BY MR. VISOSKY:
15:48:25  9     Q. We talked earlier about the decisions that --
15:48:27 10  that you would make with respect to -- well, let me just
15:48:30 11  ask it this way.
15:48:30 12       It --
15:48:31 13          MR. VISOSKY: Scratch that.
15:48:33 14     Q. (By Mr. Visosky) If you knew that an employee
15:48:34 15  had filed an EEO complaint, say a carrier had filed an
15:48:38 16  EEO complaint complaining about you, and you became
15:48:40 17  aware that they filed that EEO complaint and it was
15:48:43 18  resolved and that employee came back to work, would you
15:48:46 19  hold that against them or punish them in any way because
15:48:50 20  they had filed that EEO complaint?
15:48:52 21     A. No. My training through EEO from when I first
15:48:56 22  came in the Post Office where they actually sent you to
15:48:59 23  school for this, was that you can disagree and agree to
15:49:04 24  disagree and your third party is going to be the one
15:49:07 25  that's going to be the final decision, and everybody
```

Page 76

```
15:49:10  1  move on. And that was my outlook on stuff. Hey, just
15:49:13  2  move on. It's not that serious.
15:49:16  3          MR. VISOSKY: Thank you, Mrs. Freeman.
15:49:18  4          MS. FISHER: Thank you, Mrs. Freeman.
15:49:20  5          THE WITNESS: Is that it?
15:49:21  6          MS. FISHER: I think that's it.
15:49:23  7          Don't forget your mic.
15:49:23  8          THE WITNESS: Okay. I'm going to leave
15:49:23  9  the mic.
15:49:23 10          (Discussion off the record.)
15:49:28 11          THE VIDEOGRAPHER: We're off the record
15:49:29 12  at 3:49, and that concludes the deposition.
15:49:43 13          THE COURT REPORTER: What do y'all want
15:49:44 14  to do about signature?
15:49:51 15          MS. FISHER: Mrs. Freeman, you have the
15:49:52 16  right to read this deposition and to make corrections.
15:49:56 17  Do you want the deposition sent straight to you to do
15:50:00 18  that, or how do you want to do that?
15:50:03 19          THE WITNESS: That's fine. Send it to
15:50:03 20  105 East 25th Street, Tyler, Texas 75702-2112.
15:51:19 21          (Proceedings concluded at 3:51 p.m.)
         22
         23
         24
         25
```

Page 77

```
15:51:19  1              CHANGES AND SIGNATURE
15:51:19  2
15:51:19  3  WITNESS: CYNTHIA FREEMAN
15:51:19  4  DATE OF DEPOSITION: DECEMBER 1, 2016
15:51:19  5
15:51:19  6  PAGE/LINE   CHANGE              REASON
15:51:19  7  _____
15:51:19  8  _____
15:51:19  9  _____
15:51:19 10  _____
15:51:19 11  _____
15:51:19 12  _____
15:51:19 13  _____
15:51:19 14  _____
15:51:19 15  _____
15:51:19 16  _____
15:51:19 17  _____
15:51:19 18  _____
15:51:19 19  _____
15:51:19 20  _____
15:51:19 21  _____
15:51:19 22  _____
15:51:19 23
15:51:19 24       I, CYNTHIA FREEMAN, have read the foregoing
15:51:19 25  deposition and hereby affix my signature under the
```

```
                                              Page 78
15:51:19   1    penalty of perjury that same is true and correct, except
15:51:19   2    as noted above.
15:51:19   3
15:51:19   4                    _____
                                CYNTHIA FREEMAN
15:51:19   5
15:51:19   6    THE STATE OF _____)
15:51:19   7    COUNTY OF _____)
15:51:19   8
15:51:19   9         Before me, _____, on this day
15:51:19   10   personally appeared CYNTHIA FREEMAN, known to me or
15:51:19   11   proved to me under oath to be the person whose name is
15:51:19   12   subscribed to the foregoing instrument and acknowledged
15:51:19   13   to me that he/she executed the same for the purpose and
15:51:19   14   consideration therein expressed.
15:51:19   15        Given under my hand and seal of office on this
15:51:19   16   _____ day of _____, 2016/2017.
15:51:19   17
15:51:19   18
15:51:19   19                   _____
                                NOTARY PUBLIC IN AND FOR
15:51:19   20                   THE STATE OF
15:51:19   21
15:51:19   22
15:51:19   23        My Commission Expires: _____
15:51:19   24
15:51:19   25
```

```
                                              Page 79
15:51:19   1         IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF TEXAS
15:51:19   2              MARSHALL DIVISION
15:51:19   3
                KIMBERLY L. COX,       )
15:51:19   4                           )
                     Plaintiff,        )
15:51:19   5                           )
                vs.            ) CIVIL ACTION NO.
15:51:19   6                   )
                MEGAN J. BRENNAN,      ) 2:14-CV-00810-JRG-RSP
15:51:19   7    POSTMASTER GENERAL OF THE   )
                UNITED STATE, U.S. POSTAL   )
15:51:19   8    SERVICES,       )
                                )
15:51:19   9         Defendant.        )
15:51:19   10
15:51:19   11
15:51:19   12            REPORTER'S CERTIFICATE
15:51:19   13   ORAL AND VIDEOTAPED DEPOSITION OF CYNTHIA FREEMAN
15:51:19   14              DECEMBER 1, 2016
15:51:19   15
15:51:19   16        I, Brenda Hightower Smith, Certified Shorthand
15:51:19   17   Reporter in and for the State of Texas, hereby certify
15:51:19   18   that this deposition transcript is a true record of the
15:51:19   19   testimony given by the witness named herein, after said
15:51:19   20   witness was duly sworn or affirmed by me;
15:51:19   21        That the deposition transcript was submitted on the
15:51:19   22   _____ day of _____ 2016, to the
15:51:19   23   witness/attorney for examination, signature, and return
15:51:19   24   to me by the _____ day of _____, 2017.
15:51:19   25        That $_____ was the charge for the original
```

```
                                              Page 80
15:51:19   1    deposition charged to the Attorney for the Plaintiff.
15:51:19   2         That pursuant to the information given to the
15:51:19   3    deposition officer, the following includes all parties
15:51:19   4    of record and the time used by each party:
15:51:19   5         Mr. Visosky (19 mins.)
                     Attorney for the Defendant
15:51:19   6         Ms. Fisher (1 hr. 6 mins.)
                     Attorney for the Plaintiff.
15:51:19   7
15:51:19   8         I further certify that I am neither attorney nor
15:51:19   9    counsel for, related to, nor employed by any of the
15:51:19   10   parties to the action in which this testimony was taken.
15:51:19   11   Further, I am not a relative nor employee for any
15:51:19   12   attorney of record in this cause, nor do I have a
15:51:19   13   financial interest in this action.
15:51:19   14        Subscribed and sworn to on this the 19th day of
15:51:19   15   December, 2016.
15:51:19   16
15:51:19   17
15:51:19   18
15:51:19   19
15:51:19   20
15:51:19   21        _____
                     BRENDA HIGHTOWER SMITH, CSR, RPR, FCRR
15:51:19   22        Texas CSR No. 3107
                     Expiration Date: 12/31/2018
15:51:19   23
15:51:19   24
15:51:19   25
```

